UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ROBERT KNUTSON

**Plaintiff,**

vs.

G2 INVESTMENT GROUP, FORBES PRIVATE CAPITAL GROUP, STONE CASTLE SECURITIES, LLC, ROBERT HOLMEN, PATRICK THOMAS and JOHN OU

**Defendants.**

Civil Action No.: 14-cv-1694 RWS

**COMPLAINT AND JURY DEMAND**

Plaintiff, Robert Knutson ("Knutson"), residing at 10 Radcliff Drive, Huntington, NY by way of Complaint against the defendants, allege and say as follows:

**JURISDICTION AND VENUE**

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4); the supplemental jurisdiction of this Court over state claims is invoked under 28 U.S.C. § 1367(a).

2. Venue is proper within this District because the unlawful practices complained of herein all occurred within the Southern District of New York.

3. The causes of actions alleged seek to redress the deprivation or rights secured under the Americans With Disabilities Act of 1990 ("ADA"), 42 USC Sec. 12101 et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 USC Sec.623 et seq., the New York Human Rights Law, N.Y. Exec. Law. Art. 15 ("NYHRL"), and to recover damages, costs,

attorney fees and equitable relief pursuant thereto and under pendent state common law causes of action.

## PARTIES

4. At all relevant times, defendants G2 Investment Group and Forbes Private Capital ("hereinafter jointly referred to as G2") are associated companies who previously employed plaintiff, and offices at 142 West 57th Street, New York, New York.

5. At all relevant times, defendant Stonecastle Securities, LLC ("Stonecastle")is a successor and/or associated company of G2 with offices at 152 West 57th Street, New York, New York.

6. At all relevant times, defendant Robert Holmen ("Holmen") was the President of G2 whose home address is currently unknown.

7. At all relevant times, defendant Patrick Thomas ("Thomas") was the Managing Director and Chief Operating Officer of G2, whose home address is currently unknown.

8. At all relevant times, defendant John Ou ("Ou") was a Director of G2 whose home address is currently unknown.

## FACTUAL BACKGROUND

9. In or about August/September 2011, while Knutson was Senior Vice President at Royal Bank of Canada earning approximately $400,000/year, Holmen, began soliciting him to join G2, representing that G2 was backed by $52 million in capital and characterizing G2 as "the next Goldman Sachs."

10. As the result of Holmen's persistence and representations Knutson left the Royal

Bank of Canada and joined G2, entering into an employment contract dated September 22, 2011.

11. Shortly after Knutson started to work for G2, he learned that Holmen's representations about the company were false, aimed at inducing a highly credentialed executive to bring his skills and relationships to G2 under false pretenses.

12. Indeed, the so-called "next Goldman Sachs" as represented to Plaintiff was undercapitalized, having a mere $1.2 million in capital.

13. In or about October 2011, Knutson also learned, contrary to his employment agreement, that he was required to first gain the approval of the Private Placement Department before executing corporate bond trades, to which he promptly protested, explaining that such a requirement would delay his trades and thus destroy 50% of his business.

14. Less than two months later, Knutson was advised by Holmen and Thomas that G2 was "running out of money," and that he had to seriously limit his expenditures on behalf of the company, although he was spending an inordinate amount of time at work and on business trips away from his family.

15. Despite his efforts to obtain new business for G2, Knutson was subject to the highly unprofessional environment at the company, and the constant abuse by Ou, who often used profanity when he addressed him.

16. In early 2012, Ou's abuse of Knutson intensified, and in spite of plaintiff's complaints to Holmen, the harassment continued, resulting in Knutson being rushed to a hospital with a severe intestinal disorder.

17. While Knuston was in the hospital recovering from a stress-related intestinal disorder, and after he was released but was recovering at home, Ou continued to abuse Knutson, repeatedly calling him at the hospital and at home, insisting that he "come back to work or else." He even went so far as to tell plaintiff that "we will take away your accounts if you don't come back."

18. Since his livelihood was being threatened Knutson returned to work prematurely, only to land back in the hospital again for three days, during which time Holmen and Ou reassigned plaintiff's accounts to younger employees.

19. Having no other choice, Knutson filed a formal complaint with the company's Human Resources Department in late February 2012, although he was never advised that any investigation in fact had been conducted.

20. Subsequently, Knutson was diagnosed with debilitating Lyme Disease, and received little if any recognition of this serious medical condition.

21. On April 18, 2012, Knutson was called into Holmen's office and he demanded that Knutson resign or he would be terminated. He was then instructed to leave immediately.

22. On or about August 3, 2012 plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of age and handicap discrimination by the defendants herein.

23. On December 13, 2013, the EEOC issued a Right to Sue Letter providing plaintiff with 90 days to bring suit in the U.S. District Court.

**FIRST COUNT**

***(Violation of the Americans With Disabilities Act of 1990)***

24. Plaintiff repeats and realleges each and every allegation set forth above, as if set

forth at length herein.

25. Defendants' actions constitute harassment and discrimination against Knutson in violation of the ADA.

26. As a direct and proximate result thereof, plaintiff suffered a substantial loss in pay, mental distress, anguish, physical manifestations of his emotional distress, and these and other damages.

**SECOND COUNT**
***(Discrimination Under the ADEA)***

27. Plaintiff repeats and realleges each and every allegation set forth above, as if set forth at length herein.

28. Defendants' actions constitute harassment and discrimination against Knutson in violation of the ADEA.

29. As a direct and proximate result thereof, plaintiff suffered a substantial loss in pay, mental distress, anguish, physical manifestations of his emotional distress, and these and other damages.

**THIRD COUNT**
***(Discrimination Under the NYHRL)***

30. Plaintiff repeats and realleges each and every allegation set forth above, as if set forth at length herein.

31. Defendants' continuing pattern of harassment toward plaintiff was so severe and/or pervasive that the terms and conditions of plaintiff's employment were changed.

32. As a direct and proximate result thereof Defendants' conduct as set forth herein constitutes harassment because of his age and disability, in violation of the NYHRL.

33. As a result thereof, plaintiff suffered a substantial loss in pay, mental distress, anguish, physical manifestations of his emotional distress, and these and other damages.

**FOURTH COUNT**
***(Breach of Contract)***

34. Plaintiff repeats and realleges each and every allegation set forth above, as if set forth at length herein.

35. Defendants' actions as aforesaid establish a breach of Knutson's employment contract between the parties.

36. As a direct and proximate result therefor, plaintiff suffered a substantial loss in pay, mental distress, anguish, physical manifestations of his emotional distress, and these and other damages.

**FIFTH COUNT**
***(Breach of the Implied Covenant of Good Faith and Fair Dealing)***

37. Plaintiff repeats and realleges each and every allegation set forth above, as if set forth at length herein.

38. At all times pertinent hereto, the parties entered into an employment contract for Knutson's services with G2.

39. Defendants' conduct as aforesaid establish breach of the covenant of good faith and fair dealing.

40. As a result thereof, plaintiff suffered a substantial loss in pay, mental distress, anguish, physical manifestations of his emotional distress, and these and other damages

**SIXTH COUNT**
***(Intentional and/or Negligent Misrepresentation)***

41. Plaintiff repeats and realleges the allegations above as though set forth herein at length.

42. As set forth in detail above, the Defendants made misrepresentations and/or omissions to Plaintiff.

43. The misrepresentations and/or omissions of the defendants, were intentional and/or negligent. They were material and were intended to induce Plaintiff to enter into the transactions detailed above.

44. Plaintiff reasonably relied on the misrepresentations and/or omissions to his detriment.

45. As a result thereof, plaintiff suffered a substantial loss in pay, mental distress, anguish, physical manifestations of his emotional distress, and these and other damages.

**WHEREFORE**, plaintiff seeks Judgment against the Defendants as follows:

a. Reinstatement;

b. Compensatory damages, including past and future lost wages, salary, commissions, and employment benefits;

c. Damages for emotional and physical injury and distress;

d. Pre-and post-judgment interest;

e. Reasonable costs, including attorney's fees, expert witness fees and other costs incurred in connection with this litigation; and

f. Such other and further relief as this Court deems equitable and just under the circumstances.

**JURY DEMAND**

The plaintiff hereby demands a trial by jury for all issues so triable.

**RESNICK LAW GROUP**
**A PROFESSIONAL CORPORATION**
5 Becker Farm Road, 4th Floor
Roseland New Jersey 07068
(973) 795-1204
Attorneys for the Plaintiff
Gerald J. Resnick (GJR-5741)

Dated: March 10, 2014

By: ______________________
Gerald J. Resnick, Esq.