UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

ROBERT KNUTSON,

14 Civ. 1694 (RWS)

                    Plaintiff,

OPINION

    -against-

G2 FMV, LLC, G2 INVESTMENT GROUP, LLC,
G2 CAPITAL MARKETS, LLC, FPCG LLC d/b/a
FORCES PRIVATE CAPITAL GROUP,
STONE CASTLE SECURITIES, LLC, ROBERT
CHRISTOPHER HOLMEN, JOHN CHIHONG OU,
and JONATHAN TODD MORLEY a/k/a
J. TODD MORLEY,

                    Defendants.

------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1-3-18

A P P E A R A N C E S:

        Attorneys for Plaintiff

        LAWRENCE R. GELBER
        34 Plaza Street, Suite 1107
        Brooklyn, NY 11238
        By:  Lawrence R. Gelber, Esq.

        Attorneys for Defendants

        BOND SCHOENECK & KING, PLLC
        600 Third Avenue, 22nd Floor
        New York, NY 10016
        By:  Dennis A. Lalli, Esq.

**Sweet, D.J.**

Defendants G2 FMV, LLC ("FMV"), G2 Capital Markets, LLC ("G2CM"), and J. Todd Morley ("Morley" and, together with FMV and G2CM, the "New Defendants") have moved to dismiss the Second and Fifth Claims of the First Amended Complaint ("FAC") of Plaintiff Robert Knutson ("Knutson" or the "Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants G2 Investment Group, LLC ("G2IG"), FPCG LLC d/b/a Forbes Private Capital Group ("FPCG"), StoneCastle Securities LLC ("StoneCastle"), Robert Holmen ("Holmen"), and John Ou ("Ou" and, together with GI2G, FPCG, StoneCastle, and Holmen, the "Original Defendants," and, together with the New Defendants, the "Defendants") have moved for a judgment on the pleadings on the Second and Fifth Claims of the FAC pursuant to Federal Rule of Civil Procedure 12(c). Lastly, Defendants have moved to dismiss the First and Third Claims of the FAC as against Morley, Holmen, and Ou pursuant to Federal Rule of Civil Procedure 12(b)(6).

Based on the conclusions set forth below, Defendants' motions are granted.

1

**Prior Proceedings**

On March 3, 2014, Plaintiff filed his Complaint. Dkt. No.
2. The Complaint alleged six claims for relief: (1) a violation
of the Americans with Disabilities Act of 1990, 42 U.S.C.
§§ 12101 et seq. (the "ADA"); (2) discrimination under the Age
Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623 et
seq. (the "ADEA"); (3) discrimination under the New York State
Human Rights Law, N.Y. Exec. Law § 296 (the "NYSHRL"); (4) breach
of contract; (5) breach of the implied covenant of good faith
and fair dealing; and (6) intentional and/or negligent
misrepresentation. See generally Dkt. No. 2. Several attorney
substitutions and fitful discovery proceedings ensued. See Dkt.
Nos. 7, 39, 43-53, 63, 65, 78.

On July 8, 2017, Plaintiff moved to amend his Complaint,
which was granted on September 6, 2017. Dkt. Nos. 92, 108.
Plaintiff's FAC added several additional Defendants and alleged
five claims for relief: (1) violation of the ADA; (2) fraudulent
inducement; (3) age discrimination under the ADEA; (4) age
discrimination under the NYHRL; and (5) breach of contract and
the implied covenant of good faith and fair dealing.

On October 19, 2017, Defendants filed the instant motions, which were heard and marked fully submitted on November 15, 2017.

**Facts**

The Complaint sets forth the following allegations, which are assumed true for the purpose of this motion to dismiss. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

As useful background, it is worth first outlining the interplay between the different corporate defendants. FMV was the parent company of G2IG, and G2CM was GI2G's wholly-owned subsidiary. FAC ¶¶ 12, 20. FPCG was G2IG's wholly-owned distribution business. FAC ¶ 25. FMV and FPCG were founded by Morley. FAC ¶¶ 17, 25, 39. StoneCastle is a Financial Industry Regulatory Authority ("FINRA") registered broker-dealer through which G2IG and G2CM passed securities transactions, as G2IG and G2CM were not FINRA registered. FAC ¶¶ 18, 22, 28. Holmen was StoneCastle's Chief Compliance Officer ("CCO") and Chief Financial Officer ("CFO"). FAC ¶ 30. Ou possessed supervisory capacity at G2IG and was a registered representative of StoneCastle. FAC ¶¶ 35, 37.

Knutson started in the financial services industry as a broker at Merrill Lynch in 1977. FAC ¶ 43. Over decades in the industry, Knutson developed a successful book of business and was regularly engaged by large, financially sophisticated institutional clients. FAC ¶ 46. Knutson also suffers from several physical ailments, including rheumatoid arthritis and diverticulitis, and has a pronounced shuffle which at times requires use of a cane. FAC ¶¶ 7-8.

By August 2011, Knutson was a senior vice president at the Royal Bank of Canada ("RBC") and earned over $300,000 a year. FAC ¶¶ 44, 46. Around this time, Knutson was approached by Holmen, who solicited Knutson to leave RBC to work for G2CM.[1]

---

[1] In the FAC, Plaintiff uses the terms FMV, G2IG, and G2CM interchangeably or under the umbrella term "G2." See, e.g., FAC ¶¶ 20, 27. As the actual employment agreement, dated September 22, 2011, is referenced in the FAC and has been provided, the actual corporate entities will be noted for the sake of precision. See Declaration of Robert Holmen dated October 18, 2017 ("Holmen Decl."), Ex. A (the "Employment Agreement"), Dkt. No. 133; Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005) (citing Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)) ("In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."). As such, while the FAC states that Knutson went to work at G2IG or G2, Knutson's Employment Agreement is with G2CM, and so for the sake of clarity, the corporate Defendant on the Employment Agreement will be used. See FAC ¶¶ 56, 59, 64.

4

FAC ¶ 46. As part of the sales pitch, Holmen made the following representations about G2CM: that it was the "next Goldman Sachs" and growing fast, FAC ¶¶ 48, 95(a), 95(o); that it was "extremely" well-capitalized and had access to substantial additional capital, FAC ¶¶ 50, 95(b)-(c); that is was well-organized and well-run and with a large aviation-based portfolio, FAC ¶¶ 95(d), 95(n); that it had a substantial list of Forbes clients that Knutson could access and that information was regularly provided, FAC ¶¶ 95(e), 95(i); that G2CM was hiring respected and knowledgeable traders, FAC ¶¶ 95(g), 95(l); that Knutson could keep his sales assistant, FAC ¶¶ 66, 95(h); that Knutson could work for FPCM, have autonomy in cross trades, and continue to speak to the press, FAC ¶¶ 53, 95(f), 95(m); that trades would be backed by a subsidiary of Merrill Lynch, FAC ¶ 95(j); and that Morley would be available to meet with major clients to assist in closing transactions and developing relationships, FAC ¶ 74. Based on these representations, Knutson left RBC and started working at G2CM in September 2011. FAC ¶¶ 59-60, 99.

Holmen's solicitation of Knutson was with Morley's knowledge. FAC ¶¶ 58, 98. At the time of Holmen's representations to Knutson, Holmen knew that the statements were false. FAC ¶¶ 47, 98. As opposed to $52 million, as stated, in

fact the company only had net capital amounting to $1.2 million. FAC ¶ 52. Moreover, Holmen did not intend to grant Knutson any autonomy while employed. FAC ¶ 54.

In October 2011, Holmen informed Knutson that Knutson would not be permitted to cross corporate bond trade without prior approval of the company's Corporate Bond Private Placement Department, which went against a "trading authorization list" issued by the company that should have allowed Knutson to make such trades.[2] FAC ¶¶ 61-62. Knutson was also asked to report to Ou. FAC ¶ 64. Knutson viewed both as delaying his trades and negatively affecting his business. FAC ¶ 63. In December 2011, Holmen terminated Knutson's assistant. FAC ¶ 66.

Knutson found the environment at G2CM challenging to conduct business. Ou refused to share information with Knutson and harassed Knutson, such as using foul language and calling Knutson "old man." FAC ¶¶ 67, 72, 77. Morley cancelled meetings with clients that Knutson would set up, which embarrassed Knutson and affected his business. FAC ¶¶ 75-76. While working at G2CM, Knutson learned that the company had no mortgage or

---

[2]     The FAC states that Knutson was listed as an authorized person to make cross corporate bond trades. See FAC ¶ 62. The fact that Knutson alleges that he subsequently complained, however, suggests this is a misprint. See FAC ¶ 63.

corporate bond inventory. FAC ¶ 68. In contrast to pre-hire
representations, G2CM also delayed Knutson's expense
reimbursements and changed Knutson's health insurance policy is
a less favorable option. FAC ¶ 71.

In February 2012, Knutson was diagnosed with
diverticulitis, which required Knutson to go to the hospital for
several days. FAC ¶ 72. While at the hospital, Ou harassed
Knutson and demanded to know when Knutson would return. FAC
¶¶ 79-80. Knutson returned from the hospital, but continued
stress caused by Ou required Knutson to return to the hospital
for three days. FAC ¶ 80. During that three day readmission,
Holmen worked with Ou to reassign Knutson's accounts to other
employees. FAC ¶ 81. Around this time, Knutson filed a complaint
with the Human Resources Department, which had no results. FAC
¶ 82.

In March 2012, Knutson was diagnosed with Lyme disease. FAC
¶¶ 72, 83. While at work, Ou took a photograph of Knutson
napping in his chair, a physical consequence of Knutson's Lyme
disease. FAC ¶ 83.

In April 2012, Holmen fired Knutson. FAC ¶ 84. In August
2012, Knutson filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"), which issued a Right to Sue letter on December 13, 2013. FAC ¶¶ 85-86.

**Applicable Standards**

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such

8

allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" Munoz-Nagel v. Guess, Inc., No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)); Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); Williams v. Calderoni, 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)). The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Twombly, 550 U.S. at 555 (citation and internal quotation omitted).

Motions brought pursuant to Fed. R. Civ. P. 12(c) require application of the same standard as under a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). Heller v. Conrail, 331 F. App'x 766, 767-68 (2d Cir. 2009) (citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994)).

**Defendants' Motions are Granted**

Defendants have moved to dismiss the FAC's Second and Fifth Claims as against all Defendants and the First and Third Claims with respect to individual Defendants Morley, Holmen, and Ou. Each claim shall be addressed in turn.

### 1. Plaintiff's Second Claim is Dismissed

Defendants have moved to dismiss the FAC's Second Claim for fraudulent inducement. See FAC ¶¶ 94-100. Under his Second Claim, Plaintiff has alleged over a dozen allegedly false statements that Holmen told Plaintiff to induce him to join G2CM. See FAC ¶ 95. Defendants contend that dismissal is warranted because Plaintiff has failed to allege plausibly that he suffered a cognizable injury as a result of the alleged misrepresentations.

To state a claim of fraudulent inducement under New York law, "the defendant must have made a misrepresentation of a material fact, that was known to be false and intended to be relied on when made, and that the plaintiff justifiably relied

on that misrepresentation to its injury."[3] Amida Capital Mgmt.
II, LLC v. Cerberus Capital Mgmt., L.P., 669 F. Supp. 2d 430,
444 (S.D.N.Y. 2009) (citing Braddock v. Braddock, 60 A.D.3d 84,
86, 871 N.Y.S.2d 68 (App. Div. 1st Dep't 2009)).

"It is well-settled that to prove injury from fraud under
New York law, a party must show actual pecuniary loss." In re
Eugenia VI Venture Holdings, Ltd. Litig., 649 F. Supp. 2d 105,
121 (S.D.N.Y. 2008) (citing Rosen v. Spanierman, 894 F.2d 28, 34
(2d Cir. 1990)), aff'd sub nom. Eugenia VI Venture Holdings,
Ltd. v. Glaser, 370 F. App'x 197 (2d Cir. 2010). Damages in
fraud cases are limited by the "out-of-pocket" rule, which
"provides that plaintiffs in fraud cases may only recover
damages 'for what they lost because of the fraud, not . . . for
what they might have gained . . . . Under the out-of-pocket
rule, there can be no recovery of profits which would have been
realized in the absence of fraud.'" Pasternak v. Dow Kim, 961 F.

---

[3]    Both parties argue only New York law in their briefs and
make no mention of the law of any other forum. Accordingly, New
York law properly applies. See Golden Pac. Bancorp v. F.D.I.C.,
273 F.3d 509, 514 n.4 (2d Cir. 2001) ("The parties' briefs
assume that New York substantive law governs the issues of
contract interpretation and statute of limitations presented
here, and such implied consent is, of course, sufficient to
establish the applicable choice of law."); Corbett v. Firstline
Sec., Inc., 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009) (applying
New York law where "both parties cite exclusively to New York
contract law in their argument").

Supp. 2d 593, 596 (S.D.N.Y. 2013) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76 (1996)); see also Hoeffner v. Orrick, Herrington & Sutcliffe LLP, 61 A.D.3d 614, 615, 878 N.Y.S.2d 717, 718-19 (2009) (holding that plaintiff's "damages may not include any amount based on continued employment with the other firm, since the duration and success of his career with that firm are speculative").

The Second Circuit takes a flexible approach to the out-of-pocket rule, however, permitting compensation for foregone economic opportunities such as lost career development. See Stewart v. Jackson & Nash, 976 F.2d 86, 88 (2d Cir. 1992) (allowing a claim for fraud to proceed based on damage to the plaintiff's career development caused by fraudulent inducement to work for a firm with no real work in her practice area); Doelha v. Wathne Ltd., Inc., No. 98 Civ 6087 (CSH), 2000 WL 987280, at *7 (S.D.N.Y. July 17, 2000) ("If the proof is there, a defrauded plaintiff may base a claim for actual pecuniary loss upon an economic opportunity that the defendant fraudulently induced him to forego."). Damages may not be recovered unless they can be ascertained with reasonable certainty. See Allard v. Arthur Andersen & Co. (USA), 924 F. Supp. 488 (S.D.N.Y. 1996) ("[P]laintiffs may recover only 'out of pocket' damages that can be ascertained with reasonable certainty.").

Plaintiff's FAC has not properly pleaded an injury for fraudulent inducement. The only injury stated in the FAC resulting from the alleged fraudulent misrepresentations is that Defendant are liable to Plaintiff for "monetary damages in an amount to be determined at trial." FAC ¶ 100. The argument made in Plaintiff's opposition briefing fares no better: the only injury Plaintiff claims with regard to his fraudulent inducement claim is one "[b]ased on his prior earnings" with damages that "are not less than $900,000." Pl.'s Opp. Mem. at 9, Dkt. No. 138. This figure is evidently tethered to Plaintiff's former RBC salary, and injury based on Plaintiff's prior income is the kind of injury claim barred by the out-of-pocket rule. See Pasternak, 961 F. Supp. 2d at 597 (alterations in original) ("A plaintiff may only recover "what [he] lost because of the fraud, not . . . what [he] might have gained.").

As to other types of injury at times permitted in the Second Circuit, none can be gleaned from the FAC as presently pleaded. It is too speculative to conceive of what, if any, economic opportunities or career development Plaintiff, an already established financial broker at the time of his meetings with Holmen, would have acquired in the absence of the misrepresentations. Virola v. XO COmmunications, Inc., No. 05

13

Civ. 5056 (JG) (RER), 2008 WL 1766601, at *15 (E.D.N.Y. Apr. 15, 2008) (noting that the purpose of a fraudulent inducement claim was "to put the plaintiff in the position she would have been in if the fraudulent representations were not made"). The absence of a cognizable injury renders Plaintiff's fraudulent inducement claim deficient. See Connaughton v. Chipotle Mexican Grill, Inc., 29 N.Y.3d 137, 143, 75 N.E.3d 1159 (2017) (dismissing plaintiff's fraudulent inducement claim when the "pleading is fatally deficient because he did not assert compensable damages resulting from defendants' alleged fraud").

Accordingly, Plaintiff's Second Claim for fraudulent inducement is dismissed.

## 2.    Plaintiff's Fifth Claim is Dismissed

Defendants have moved to dismiss the FAC's Fifth Claim for breach of contract and covenant of good faith and fair dealings. See FAC ¶¶ 115-24. Under his Fifth Claim, Plaintiff has alleged that the Employment Agreement: was "premised on the promises made to induce [Plaintiff] to join G2," which were broken, FAC ¶ 116; contained no restriction on Plaintiff's ability to engage in "cross-trades," but from which Plaintiff was restricted, along with a "measure of autonomy," FAC ¶ 117; stated that

14

Plaintiff would have "duties commensurate with [the title of Managing Director], as directed from time to time by the Company's President, to whom you shall report," so that Plaintiff was obligated to report "solely" to Holman and could not be subordinated to Ou, FAC ¶¶ 118-20. Plaintiff has also alleged that during his employment, Defendants acted in bad faith towards him by breaking their promises and harassing him. FAC ¶ 122. Defendants contend, principally, that Plaintiff's Employment Agreement contains a merger clause which bars any prior oral representations varying the written agreement and that, because the employment was at-will, G2CM was entitled to change the terms of employment. As a secondary argument, Defendants contend that Plaintiff's breach of contract claim should be dismissed against individual defendants who did not sign the Employment Agreement. Lastly, Defendants argue that the covenant of good faith and fair dealings claim should be dismissed as duplicative of the breach of contract claim.

To state a breach of contract claim under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted)

15

(quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). It is well-established that "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565, 780 N.E.2d 166 (2002) (citation omitted). A written agreement that is complete, clear, and unambiguous must be enforced according to its terms. Id.

A contract is unambiguous when the contractual language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion. Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010). Consequently, "when the parties to a contract have memorialized their agreement in a writing which purports to be a complete and accurate integration, i.e., which embodies all of the mutual rights and obligations of the parties, the Court will exclude evidence of prior or contemporaneous agreements which would vary the terms of the written instrument." Broyles v. J.P. Morgan Chase & Co., No. 08 Civ. 3391 (WHP), 2010 WL 815123, at *3 (S.D.N.Y. Mar. 8, 2010) (quoting Lee v. Joseph E. Seagram & Sons. Inc., 413 F. Supp. 693, 700 (S.D.N.Y. 1976)); see also Mizuna, Ltd. v. Crossland Fed. Sav. Bank, 90 F.3d 650, 659-61 (2d Cir. 1996) (rejecting "discrepancies" between alleged prior

oral agreements and written contract with a valid merger clause present).

New York law also recognizes an implied covenant of good faith and fair dealing in every contract. See M/A Com Security Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990). The covenant "'embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Atmosphere Scis., LLC v. Schneider Advanced Techs., Inc., No. 12 Civ. 3223 (SAS), 2012 WL 4240759, at *5 (S.D.N.Y. Sept. 19, 2012) (quoting 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131 (2002)). "Consequently, a claim that defendant has breached the duty of good faith can only survive a motion to dismiss if it is based on allegations that differ from those underlying an accompanying breach of contract claim." Cnty. of Orange v. Travelers Indem. Co., No. 13 Civ. 6790 (NSR), 2014 WL 1998240, at *2 (S.D.N.Y. May 14, 2014) (citation omitted); see also Hosp. Auth. of Rockdale Cnty. v. GS Capital Partners V Fund, L.P., No. 09 Civ. 8716 (PAC), 2011 WL 182066, at *4 (S.D.N.Y. Jan. 20, 2011) (holding that a plaintiff "may bring two breach of contact claims, one based on breach of the express terms and the other based on breach of the implied duty, as long as they are supported by factually distinct

17

allegations"); ARI & Co., Inc. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) (internal quotation marks and alternations omitted) ("A claim for the breach of the implied covenant of good faith and fair dealing must also be dismissed where it seeks to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract.").

The Employment Agreement contains two provisions relevant to Plaintiff's breach of contract claim. First, Plaintiff's employment was contracted to be "on an at-will basis." See Holmen Decl., Ex. A, at 1; see also id., at 4. Second, the Employment Contract contained an unambiguous merger clause: "This Letter Agreement, when signed by you, shall, together, with the FCA [Fair Competition Agreement] and then-current employee handbook, constitute the entire agreement between the Company and you relating to your employment." Id., at 3.

Plaintiff's breach of contract claim is, in large part, predicated on alleged representations made to him prior to the signing of the Employment Agreement. See FAC ¶ 116. To the extent Plaintiff's claim rests on representations prior to the Employment Agreement itself—such as about what kinds of trades Plaintiff would be entitled to make, to whom he would report, what degree of autonomy he would possess, who else G2CM would

18

hire, or any other representations "to vary or add to the terms of contract"—they are all barred by the clear merger clause in the Employment Agreement in the context of Plaintiff's breach of contract claim. NAB Const. Corp. v. Consol. Edison Co. of N.Y., Inc., 222 A.D.2d 381, 381, 636 N.Y.S.2d 37, 38 (App. Div. 1st Dep't 1995).

The authorities presented by Plaintiff are inapposite. For example, Plaintiff cites Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16 (2d Cir. 1997), for the proposition that "[a] general merger clause does not preclude parol testimony where a claim is based on fraud in the inducement." Id. at 21. This is a correct statement of law, but Plaintiff has left out the immediately following explanatory portion of the Second Circuit's statement: that because the "parol evidence rule rests on the rationale that a later written agreement has supplanted prior negotiations . . . the rule does not come into play until the existence of an enforceable written agreement has been shown." Id. (citation omitted). Plaintiff's failure to differentiate the parole evidence rule's application in the context of breach of contract claims as opposed to fraud-based claims like fraudulent inducement permeates other cited authorities too. See Karacostas v. Cigna Int'l Corp., No. 90 Civ. 5053 (PKL), 1991 WL 8416, at *4-*5 (S.D.N.Y. Jan. 22, 1991) (granting dismissal for

plaintiff's breach of contract claim while rejecting "strict application" of the parole evidence rule for fraud in the inducement claim); Sabo v. Delman, 3 N.Y.2d 155, 161, 143 N.E.2d 906 (1957) (citations omitted) ("The parol evidence rule forbids proof of extrinsic evidence to contradict or vary the terms of a written instrument . . . in a breach of contract action . . . . However, the parol evidence rule has no application in a suit brought to rescind a contract on the ground of fraud."); Weistrop v. Necchi Sewing Mach. Sales Corp., 11 Misc. 2d 642, 644, 168 N.Y.S.2d 387 (Sup. Ct. 1957) (citation omitted) (holding that contract's merger clause was "not conclusive on the question whether it constitutes the entire contract" and that it did not "preclude the defendants from claiming fraud in the inducement").[4]

Plaintiff's breach of contract claim does not sound in fraud, unlike, for example, Plaintiff's fraudulent inducement claim. There is no dispute that the Employment Agreement was a valid contract entered into between the parties, and Plaintiff is not seeking to rescind the Employment Agreement. As such,

---

[4] Similarly unavailing, but for slightly different reasons, is Dorset Indus., Inc. v. Unified Grocers, Inc., 893 F. Supp. 2d 395 (E.D.N.Y. 2012), which considered the use of parole evidence solely for that plaintiff's good faith and fair dealing claim after dismissing plaintiff's breach of contract claim. See id. at 406-07.

Plaintiff's pre-Employment Agreement discussions, and any
representations Holmen made, cannot apply to Plaintiff's breach
of contract claim.

The remainder of Plaintiff's breach of contract claim,
predicated on changes to Plaintiff's employment while at G2CM,
such as limiting his trading responsibilities, reassigning
Plaintiff to a different supervisor, or resources that would be
available to him at G2CM, fails because of the Employment
Agreement's at-will provision.[5] As an at-will employee, an
employer may change "the terms of its employee's at-will
employment contract and [if] the employee chooses to remain in
the employer's employ after being advised of that change, the
employee is deemed to have acquiesced to the new terms of
employment and cannot later claim compensation based on the
terms of the original contract." Campeggi v. Arche Inc., No. 15
Civ. 1097 (PGG), 2016 WL 4939539, at *6 (S.D.N.Y. Sept. 14,
2016) (internal citation and quotation marks omitted) (quoting
Arakelian v. Omnicare, Inc., 735 F. Supp. 2d 22, 32-33 (S.D.N.Y.

---

[5]    To the extent that Plaintiff is alleging a breach of
contract claim based on "delaying expense reimbursements" and
"chang[ing] to a less favorable health insurance policy," FAC
¶ 71, it is neither pleaded nor clear which provision of the
Employment Agreement was breached, and no allegations have been
put forward to indicate that any changes made by G2CM towards
Plaintiff were different than "other similarly situated
executives of the Company," Holmen Decl., Ex. A, at 2.

2010)); see also Bessemer Trust Co. v. Branin, 618 F.3d 76, 93 (2d Cir. 2010) (first alteration in original) ("If [plaintiff] could be dismissed at will by [the employer], it seems to us, the lesser action of changing his role at the firm, subject of course to his choosing to depart at his option instead, was permissible too."), certified question accepted, 15 N.Y.3d 836 (2010), and certified question answered, 16 N.Y.3d 549 (2011).

Here, there is no allegation that Plaintiff was not made aware of changes to his employment at G2CM in advance. While Plaintiff might have been unhappy with changes wrought by Defendants or by alleged abuse he suffered while employed, the at-will nature of his Employment Agreement allowed him "right to leave such employment if the new terms [were] unacceptable." Klein v. Torrey Point Grp., LLC, 979 F. Supp. 2d 417, 432 (S.D.N.Y. 2013). By continuing to remain, any changes to his employment arraignment were "assented to," barring his instant breach of contract claim.[6] Bottini v. Lewis & Judge Co., 211

---

[6] The only authority Plaintiff has presented is Izzo v. Freedom Graphics Sys., Inc., No. 3:15 Civ. 602 (SRU), 2016 WL 5219446 (D. Conn. Sept. 20, 2016), apparently for the proposition that an "employer can change an at-will employee's responsibilities without breaching the agreement, even if it might not be able to change its obligations to the employee." Id., 2016 WL 5219446, at *1. While not cleanly phrased, this observation appears to reference the permissible prospective versus impermissible retroactive changes to an at-will

A.D.2d 1006, 1008, 621 N.Y.S.2d 753, 754 (1995) (citation omitted).

Plaintiff's good faith and fair dealings claim also fails for two reasons. First, Plaintiff was an at-will employee. "As the courts within this district have repeatedly recognized, well-settled New York law holds that no implied covenant of good faith and fair dealing attaches to at-will employment contracts." Nunez v. A-T Fin. Info. Inc., 957 F. Supp. 438, 443 (S.D.N.Y. 1997) (collecting cases); see also Campeggi v. Arche Inc., No. 15 Civ. 1097 (PGG), 2016 WL 4939539, at *6 (S.D.N.Y. Sept. 14, 2016) ("Plaintiff's at-will employment status . . . is fatal to . . . her claim for breach of the implied covenant of good faith and fair dealing."). There is no dispute, and the Employment Agreement plainly states, that Plaintiff was an at-will employee. This alone provides grounds for dismissal. See Grewal v. Cuneo Gilbert & LaDuca LLP, No. 13 Civ. 6836 (RA), 2017 WL 1215752, at *10 (S.D.N.Y. Mar. 31, 2017).[7]

---

employee's employment that this Court discussed in Lankau v. Luxoft Holding, Inc., No. 16 Civ. 8690 (RWS), 2017 WL 2954763 (S.D.N.Y. July 10, 2017), where, to dispel any confusion, this Court did dismiss breach of contract claims made by an at-will employee based on prospective employment changes. See id., 2017 WL 2954763, at *10.

[7] Plaintiff's authorities are again inapposite. In Wakefield v. N. Telecom, Inc., 769 F.2d 109 (2d Cir. 1985), the Second Circuit noted an exception to the general New York rule of no

23

Second, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002); see also Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 271-72 (S.D.N.Y. 2008) (internal quotation marks and citation omitted) ("Such a claim may be brought, if at all, only if it is based on allegations different than those underlying the accompanying breach of contract claim."). Plaintiff alleges that the "conduct" described in his breach of contract claim, outlined above, was "in manifest bad faith." FAC ¶ 121. Yet the only allegations made outside the parameters of the Employment Agreement are to

---

implied good faith in at-will agreement that an employer may not "terminate an employee for the purpose of avoiding the payment of commissions which are otherwise owed," which was a benefit that accrued under the terms of the agreement. Id. at 112. Based on Wakefield, the court in Rozenzweig v. ClaimFox, Inc., 251 F. Supp. 3d 449 (E.D.N.Y. 2017), found it "plausible that [the employer] terminated the Plaintiff to avoid providing her with a reasonable accommodation, pregnancy leave, or disability benefits," provisions noted in the Human Resources manual. Id. at 457, 460. Putting aside whether Wakefield is still good law, see, e.g., Bravia Capital Partners, Inc. v. Fike, No. 09 Civ. 6375 (JFK), 2010 WL 3359470, at *6 (S.D.N.Y. Aug. 25, 2010) (noting that "Wakefield's continued validity . . . is unclear"), here, Plaintiff has not identified any accrued benefits under the terms of his Employment Agreement that he has not received and to which he plausibly claims entitlement.

"persistent harassment and threats" made in "bad faith" against Plaintiff by Defendants. FAC ¶ 122. Even assuming the allegations are true and such "arbitrary and unreasonable" insults occurred, Plaintiff has not plausibly pleaded how those insults prevented him from "receiving the fruits of the contract" to which he was entitled. Butvin v. DoubleClick, Inc., No. 99 Civ. 4727 (JFK), 2001 WL 228121, at *7 (S.D.N.Y. Mar. 7, 2001), aff'd, 22 F. App'x 57 (2d Cir. 2001). Moreover, outside of that one claim, the gravamen of Plaintiff's good faith and fair dealings claim is based on alleged breaches of his Employment Agreement and involve the same facts underlying his breach of contract claim. As this claim is redundant to Plaintiff's breach of contract claim, it must be dismissed for this reason as well. See, e.g., MacPhee v. Verizon Commc'ns Inc., No. 06 Civ. 7870 (BSJ), 2008 WL 162899, at *6 (S.D.N.Y. Jan. 15, 2008).

Accordingly, Plaintiff's Fifth Claim for breach of contract and covenant of good faith and fair dealing is dismissed.

## 3. Plaintiff's First and Third Claim Are Dismissed Against Individual Defendants

Defendants have moved to dismiss the FAC's First Claim, for disability discrimination in violation of the ADA, FAC ¶¶ 87-93,

and FAC's Third Claim, for age discrimination in violation of the ADEA, FAC ¶¶ 101-08, as against individual Defendants Morley, Holmen, and Ou. Defendants argue that individuals are not subject to liability under these laws.

The law in the Second Circuit on this question is clear. First, "there is no right of recovery against individual defendants under the ADA." Corr v. MTA Long Island Bus, 199 F.3d 1321 (2d Cir. 1999) (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995)); see also Ivanov v. N.Y.C. Transit Auth., No. 13 Civ. 4280 (PKC), 2014 WL 2600230, at *5 (S.D.N.Y. June 5, 2014). Second, "individual supervisors may not be held personally liable under the ADEA." Martin v. Chem. Bank, 129 F.3d 114 (2d Cir. 1997); see also Sanders-Peay v. NYC Dep't of Educ., No. 14 Civ. 4534 (CBA) (MDG), 2014 WL 6473507, at *3 n.3 (E.D.N.Y. Nov. 18, 2014) (noting that "the scope of the ADEA does not extend to claims against non-employers or individuals" and collecting cases).[8]

---

[8]     Plaintiff highlights that in Tomka, the Second Circuit referenced prior cases from within the circuit that held that employer agents were liable under Title VII. While relevant insofar as Title VII has informed how courts have interpreted the ADA and ADEA, see, e.g., Ivanov, 2014 WL 2600230, at *5, Plaintiff ignores what the Tomka court held just two sentences later: that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." Tomka, 66 F.3d at 1313.

26

Plaintiff may disagree with the Second Circuit's reading of the ADA and ADEA statutory language, but it cannot be argued that the Second Circuit's unambiguous view must control here. Accordingly, Plaintiff's First Claim under the ADA and Third Claim under the ADEA are dismissed as against individual Defendants Morley, Holmen, and Ou.

## Conclusion

For the foregoing reasons, Defendants' motions are granted.

It is so ordered.

**New York, NY**
**January  7, 2018**

**ROBERT W. SWEET**
**U.S.D.J.**