USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/28/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Robert Knutson,

      Plaintiff,

  –v–

G2 FMV, LLC, *et al.*,

      Defendants.

14-CV-1694 (AJN)

MEMORANDUM
AND ORDER

ALISON J. NATHAN, District Judge:

  Plaintiff Robert Knutson brings this action against his former employer and supervisors for employment discrimination on the basis of disability and age in violation of the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the New York State Human Rights Law ("NYSHRL"). Before the Court is Defendants' motion for summary judgment. Dkt. No. 152. For the reasons stated below, the motion is GRANTED.

**I. BACKGROUND**

  The following facts are drawn from the parties' statements made pursuant to Local Civil Rule 56.1 and are undisputed unless otherwise noted. As Defendants' point out, Plaintiff has failed to submit a statement pursuant to Local Civil Rule 56.1 that directly responds to or disputes any of the facts in Defendants' Rule 56.1 statement. *See* Local Civil Rule 56.1(b) ("The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party"). Instead, Plaintiff only submitted his own statement of undisputed facts. As discussed below, this omission creates difficulties for Plaintiff's opposition to summary judgment. *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the

statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."). However, for purposes of this discussion section, the Court will draw the relevant facts from apparent areas of agreement.

Plaintiff began working at Defendant G2 Capital Markets, LLC ("G2CM"), on September 26, 2011. Defendants' Local Civil Rule 56.1 ("Defendants 56.1"), Dkt. No. 154, ¶ 14; Plaintiff's Local Civil Rule 56.1 Statement ("Plaintiff 56.1"), Dkt. No. 164, ¶ 16. He was hired by G2CM President, Defendant Robert Holmen, as a generalist sales person and was assigned to three fixed income/structured products desks. Defendants 56.1 ¶ 23; Plaintiff 56.1 ¶ 23. Plaintiff had worked in finance since 1977. Plaintiff 56.1 ¶ 12. At the time of his hiring, Plaintiff was 59 years old and Holmen was aware that Plaintiff had disabilities. Defendants 56.1 ¶¶ 15, 16. Each structured products desk had a trader. Plaintiff 56.1 ¶ 24; Defendants 56.1 ¶ 24. One of these traders, John Ou, considered himself the head trader and conducted weekly meetings. Defendants 56.1 ¶ 26. Plaintiff claims that he encountered various difficulties while employed at G2CM, which are discussed in more detail below. In February 2012, Plaintiff was hospitalized twice with diverticulitis. Plaintiff 56.1 ¶ 46. In March 2012, he was diagnosed with Lyme disease. *Id.*

On April 18, 2012, Holmen terminated Plaintiff's employment at G2CM. Defendants 56.1 ¶ 61; Plaintiff 56.1 ¶ 50. Defendants claim Holmen made this decision principally because of Plaintiff's lack of productivity, his neglect of the fixed income business to which he was assigned, a lack of meaningful business from client relationships, Plaintiff's failure to provide notice of when he was going to be absent, and his failure to arrange for coverage of his accounts when he was absent. Defendants 56.1 ¶ 62. Plaintiff disputes this.

After receiving a right to sue letter from the EEOC, Plaintiff brought this lawsuit. Judge Sweet granted a partial motion to dismiss and motion for judgment on the pleadings for Plaintiff's claims of fraudulent inducement, breach of contract, and breach of the implied covenant of good faith and fair dealing, as well as Plaintiff's claims under the ADA and ADEA against the individual defendants.[1]  Dkt. No. 142.  After discovery closed, Defendants moved for summary judgment.

## II.    LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that he is entitled to relief as a matter of law. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). However, when the burden of proof at trial would fall on the non-moving party, the moving party may meet its burden by "point[ing] to a lack of evidence . . . on an essential element" of the non-moving party's claim. *Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir.

---

[1] This case was originally assigned to the late Hon. Robert W. Sweet.  It was subsequently reassigned to the late Hon. Deborah A. Batts, before being transferred to the undersigned.

2009). There is a genuine issue of material fact if a reasonable jury could decide in the non-moving party's favor. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted).

To survive a summary judgment motion, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). In doing so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citation omitted).

Although "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions . . . [n]onetheless, summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (internal quotation marks and citations omitted); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (It is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

### III. DISCUSSION

#### A. Discriminatory Termination

Plaintiff asserts that his termination was the product of age and disability discrimination in violation of the ADEA and ADA. As a threshold matter, Defendants object to these claims on

the basis that the operative pleading, the First Amended Complaint, failed to raise them. It is axiomatic that "the central purpose of a complaint is to provide the defendant with notice of the claims asserted against it." *Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006). The First Amended Complaint gives no notice that Plaintiff intends to assert discriminatory termination claims. The only mention of his termination occur in the facts section of the complaint, and is as follows: "Finally, in April, 2012, Holmen fired Mr. Knutson." First Amended Complaint, Dkt. No. 115, ¶ 84. There is no allegation in the First Amended Complaint that the termination was caused by a discriminatory motive. The allegations under each of the causes of action are directed to other conduct, namely an alleged failure to provide a reasonable accommodation and alleged harassment. And although Plaintiff could have moved to amend the FAC and address the potential prejudice to Defendants from the late addition of discriminatory termination claims, he never did so. *See Greenidge*, 446 F.3d at 361. Despite this lack of notice, Defendants evidently became aware that Plaintiff intended to assert these claims in opposing summary judgment and therefore addressed them in their opening papers, while still objecting to their tardiness. *Cf. Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 569 (2d Cir. 2000) (claim not clearly raised in the complaint may be considered at summary judgment when "the essential elements of the charge" are in the complaint and the defendant failed to object to the claim's "tardiness" and only "attacked [the] claim on the merits"). Because the First Amended Complaint does not raise discriminatory termination claims it would be improper to consider them at the summary judgment stage. *Greenidge*, 446 F.3d at 361; *see also Rojo v. Deutsche Bank*, 487 F. App'x 586, 588-89 (2d Cir. 2012).

     Moreover, even if these claims could be considered, they would still fail. Discriminatory termination claims under the ADEA and ADA follow the familiar three-part burden shifting

framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). Under this framework, the "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Gorzynski*, 596 F.3d at 106. If this requirement is met "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action." *Id.* (quotation omitted). "Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Id.* Specifically, a plaintiff at this final stage in the burden shifting analysis must, to defeat summary judgment, "present[] facts, which taken in his favor, suffice to show that a triable issue exists as to whether his age [or disability discrimination] was a but for cause of" the adverse employment action against him. *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (per curiam) (quotation omitted).

To establish a prima facie case of discrimination, a plaintiff "must show (1) that she was within the protected [] group, (2) that she was qualified for the position, (3) that she experienced adverse employment action [such as a termination], and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107. The inference of discrimination "can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in [ageist or ableist] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge[;]. . . [or] when an employer replaces a terminated or demoted employee

6

with an individual outside the employee's protected class." *Littlejohn v. City of New York*, 795 F.3d 297, 312-13 (2d Cir. 2015) (quotation omitted).

     Here, no reasonable factfinder could conclude that Plaintiff can show circumstances giving rise to an inference of discrimination for his termination. Although Plaintiff does not dispute that he was never replaced at G2CM, he argues that an inference of discrimination is supported by his claim that his accounts were subsequently offloaded to younger people. But Plaintiff neither cites nor provides any evidence whatsoever that his accounts were offloaded or that the new recipients of the accounts were younger than him. "As Judge Easterbrook has observed, '[j]udges are not like pigs, hunting for truffles buried' in the record. . . .' [T]he court is not obliged to sift through a large court record against the possibility that it will find something to warrant denial of the motion that the non-moving party has not bothered to call to its attention." *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 618 (S.D.N.Y. 2008) (quoting *Albrechtsen v. Bd. of Regents of the Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)); *see also N.Y. State Teamsters Conf. Pension & Retirement Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005).

     Plaintiff also argues that discrimination can be inferred from what he describes as John Ou's campaign to paint him as too old and disabled to do his job by taunting him in age-related terms, such as "old man." But again, Plaintiff fails to cite or provide any evidence that Ou convinced Holmen that Plaintiff's disabilities rendered him incompetent or that he was denigrated by Ou in age or disability-related terms. His Rule 56.1 statement makes no mention of the former claim. And the closest it comes to on the latter claim is to say that Ou engaged in "harassment" without reference to age or disability-related terms. Plaintiff 56.1 ¶ 38. Plaintiff's Rule 56.1 statement in turn cites to statements in Plaintiff's affidavit that likewise only contains

conclusory references to Ou's "harassment," "name calling," and "profanity." *See* Knutson Aff., No. 162, ¶¶ 24, 40, 53, 54. There is no mention of the use of disability or age-related terms to degrade Plaintiff or the use of specific taunt, "old man." While Ou may have been mean or abusive to Plaintiff, antidiscrimination laws do not form "a general civility code." *Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 97 (2d Cir. 2012) (quotation omitted). There must be a connection to the plaintiff's protected class or characteristic. That is why an inference of discrimination arises from the use of "criticism . . . in [ageist or ableist] degrading terms." *Littlejohn*, 795 F.3d at 312-13 (quotation omitted). Defendants, for their part, do produce evidence, in the form of a declaration from Ou, that he never used age or disability-related terms to denigrate Plaintiff. *See* Ou Decl., Dkt. No. 156, ¶¶ 23-25; Defendants 56.1 ¶ 72. Accordingly, no reasonable factfinder could determine that such language was used, and Plaintiff's claim of age and disability-related denigration cannot support the requisite inference of discrimination.

In a section disputing "Defendant's Assertion of 'Facts,'" Plaintiff mentions other issues regarding his employment at G2CM, although he does not argue that they support an inference of discrimination. To the extent, he intended to make such arguments, they would be unsuccessful. Plaintiff references an incident when he was taken off one of his accounts, DoubleLine, which was then assigned to another employee. But Plaintiff does not provide any evidence about the employee who received the DoubleLine account. The mere fact that Plaintiff believed Defendants' conduct regarding the DoubleLine account was unfair cannot support an inference of discrimination. *See Krist*, 688 F.3d at 97 (antidiscrimination laws are not a "civility code") (quotation omitted). Likewise, Plaintiff takes issue with the fact that Defendants required him to seek permission from specialist corporate bond traders before placing corporate bond trades,

which he says contravened the promises made to him when he joined G2CM. But Plaintiff provides nothing to contradict Defendants' evidence that no other similarly situated employee—i.e. no one other than the corporate bond desk—could place corporate bond trades without prior authorization. *See* Defendants 56.1 ¶ 29.

Based on this record, no reasonable finder of fact could conclude that Plaintiff has satisfied his prima facie burden of showing circumstances that give rise to an inference of discrimination. Accordingly, even if the discriminatory termination claims could be properly considered, Defendants are still entitled to summary judgment on them.

### B. Reasonable Accommodation Claim

In his opposition to summary judgment, Plaintiff also asserts that Defendants illegally failed to provide a reasonable accommodation by refusing to accommodate his need to be hospitalized and work from home. As Defendants point out, Plaintiff did not dispute Defendants' Rule 56.1 statement that Plaintiff never needed any accommodations beyond what he was provided and never asked for an accommodation. Defendants 56.1 ¶ 67. Plaintiff likewise testified to that effect during his deposition. Knutson Tr. 417-22.

With regard to his need to be hospitalized and work from home specifically, Plaintiff testified that no one at G2 expressed even "annoyance" or "unhappiness" about his medically-related absences from the office that occurred during February 2012. *See* Knutson Tr. 388:10-14 (Q: "Did anyone at G2 ever indicate annoyance or happiness because of your absences in February or at any later time?" A: "Not to my knowledge"); *see also* Defendants 56.1 ¶ 84. In his opposition to summary judgment, Plaintiff says that John Ou pressured him to return to the office. During his deposition, Plaintiff stated that during February 2012, Ou called him in the hospital, while he was at the doctor's office, and at home. Knutson Tr. 452:19-21. Plaintiff

9

further testified that the substance of these calls consisted of John Ou "asking me where I was, what's going on, where are you." Knutson Tr. 376:15-16; *see also id.* 371:23. At the deposition, Plaintiff stated that he felt that Ou was "bugging" him and that the calls were harassment. Knutson Tr. 372:8; 455:19-20 ("It was my feeling he just wanted to harass me"). Plaintiff does not say how often Ou called, though it presumably happened at least three times based on three locations Plaintiff gives. Plaintiff also does not dispute Defendants' Rule 56.1 statement, based on Ou's declaration, that Ou called Plaintiff because he did not know where Plaintiff was. Defendants 56.1 ¶¶ 81-82. At his deposition, Plaintiff testified that he does not remember whether he ever told Ou where he was, whether Ou was aware of Plaintiff was, or whether Ou knew about Plaintiff's diverticulitis. Knutson Tr. 369:21-370:4; 371:24-372:3; 375:21-25; 455:8-13; 709:24-710:8.

Viewed in the light most favorable to him, Plaintiff's deposition testimony states that Ou made what he speculates to be unnecessary, harassing calls to ask Plaintiff where he was, but that Ou did not indicate annoyance or unhappiness with Plaintiff's absence. Based on this deposition testimony, no reasonable factfinder could conclude that Ou's calls to ask Plaintiff where he was constituted pressure on Plaintiff to return to the office or a denial of a reasonable accommodation. To the extent Plaintiff seeks to interpret statements made in his affidavit to contradict his deposition testimony and create a genuine dispute of material fact, he cannot do so. It is a "well-settled rule" in this Circuit that "that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Margo v. Weiss*, 213 F.3d 55, 60 (2d Cir. 2000) (quotation omitted).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's reasonable accommodation claim.

10

### C. Harassment Claims

Plaintiff also asserts claims for workplace harassment based on age and disability. Harassment is actionable under the ADEA and ADA when "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 41 (2d Cir. 2019) (quotation omitted); *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019). The workplace environment must be "objectively hostile or abusive." *Davis-Garett*, 921 F.3d at 41 (quotation omitted).

Here, no reasonable factfinder could determine that Plaintiff has met this standard. Plaintiff argues that John Ou denigrated him in age and disability-related terms. But as discussed above, Plaintiff fails to provide any evidence supporting these allegations and no reasonable factfinder could determine that this discriminatory denigration occurred. Plaintiff also claims that Ou photographed him in embarrassing ways, but cites to no supporting evidence and his Rule 56.1 statement makes no reference to this allegation. Finally, Plaintiff appears to argue that Ou's calls to him in the hospital constitutes actionable harassment. As discussed above, Plaintiff testified at his deposition that Ou made what he believes to be unnecessary calls to ask Plaintiff where he was, but that Ou did not indicate annoyance or unhappiness with Plaintiff's absence. Even if Plaintiff genuinely and subjectively felt harassed by these calls, no reasonable factfinder could conclude that they were so objectively severe or pervasive as to alter the conditions of Plaintiff's employment. Defendants are entitled to summary judgment on these claims

### D. NYSHRL Claims

Aside from a potential difference in the standard for what constitutes a disability, age and disability discrimination claims under the NYSHRL are evaluated under the same standard as its federal counterparts. *See Fox*, 918 F.3d at 76; *Downey v. Adloox, Inc.*, 789 F. App'x 903, 905 (2d Cir. 2019). Because Defendants are entitled to summary judgment on Plaintiff's ADA and ADEA, they are entitled to summary judgment on Plaintiff's NYSHRL claims as well.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. Defense counsel's motion to withdraw is denied as moot. The Clerk of Court is respectfully directed to enter judgment and close this case.

This resolves Dkt. Nos. 152, 173.

Dated: May 28, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge